FIRST NATIONAL BANK OF EASTON *vs.* CHARLES F. SMITH & others.

Suffolk. March 16, 1881; March 23. — May 15, 1882. ENDICOTT & FIELD, JJ., absent.

Two debtors made an assignment of all their property in trust, for the security of new notes to be given by them to such of their creditors as should become parties to the assignment within two months from the date thereof. By the terms of the assignment each creditor was to receive four new notes, payable at different times, the last being payable in thirty months, and covenanted not to sue his original demand except on default in the payment of the new notes. The trustees paid only a dividend on the new notes. After the last of the new notes matured and one debtor had received a discharge in bankruptcy and the other had ceased to be a resident of this Commonwealth, a creditor brought a bill in equity seeking to become a party to the assignment. *Held,* that, although the trustees had funds sufficient to pay him the same dividend which the creditors who signed had received, and although he had accidentally failed to be a party to the assignment, and would have been one had he known of it in time, the bill could not be maintained.

BILL IN EQUITY, filed May 17, 1880, against Charles F. Smith, Caleb H. Warner, Thomas Upham, all of this Commonwealth, and John W. Draper, formerly of this Commonwealth, but now a resident of the State of Texas, alleging that, on August 17, 1875, the Hickory Coal Company made a promissory note for $5000, payable in four months after date to its own order, which it indorsed, and that the note before its maturity was indorsed by the defendants Upham and Draper, and became the property of the plaintiff; that at its maturity the plaintiff, being the holder thereof for value, duly demanded payment thereof of the Hickory Coal Company, which neglected to pay the same, and due notice of its nonpayment was given to Upham and Draper; that Upham and Draper, prior to February 2, 1876, were indebted to the plaintiff to the amount of said note, the expense of protest and the interest thereon, and that said indebtedness had in no part been paid; that on or about February 2, 1876, Upham and Draper, being unable to pay their debts in full, with the intent of applying all their property for the equal benefit of all their creditors, and in order that all their creditors might eventually be paid in full, entered into an indenture with the defendants Smith and Warner, and with their creditors, whereby Upham and

Draper agreed to give new notes, payable in twelve, eighteen, twenty-four and thirty months, to each of the creditors who should become parties to said indenture within two months, and to pay the indebtedness of such creditors made up as cash of the date of February 15, 1876; that by said indenture they conveyed and assigned all their personal property and assets, as set forth in certain schedules annexed thereto, to Smith and Warner in trust, to receive, manage and dispose of the same, and to divide the proceeds thereof ratably among said creditors; and the creditors covenanted not to sue their original demands, unless default was made in the payment of the new notes at their maturity; that the indenture was duly executed by the four defendants, and Smith and Warner accepted said trust and took possession of the property and assets thereby assigned; that the plaintiff then had, and still has, a right to become a party to the indenture; that certain creditors of Upham and Draper were notified of the execution of the indenture, and were invited to become parties thereto, of whom some accepted and signed the same, and others refused; that the plaintiff was not notified of the indenture, and had no opportunity to become a party thereto, until, as Smith and Warner allege, the time within which a creditor might sign the same had expired; that, in contravention of the intent and terms of the indenture, the defendants wilfully and intentionally withheld notice from the plaintiff of the intended indenture and assignment, in order to deprive the plaintiff of its share of the property thereby assigned; that the plaintiff did not know that the indenture had been made, or that the assignment thereby made was contemplated, until about July 1879; that thereupon the plaintiff applied to Smith and Warner, and asked to be allowed to sign the indenture, and to become a party thereto, on a footing with the other creditors who signed the same; but that Smith and Warner declined to allow the plaintiff to sign, and refused, and have ever since refused, to allow it to sign, or to recognize it as a party to the indenture, and have refused to, and withheld from, the plaintiff all benefit of the assignment; and that by said indenture Upham and Draper assigned and conveyed all their respective property and assets to Smith and Warner, and neither Upham nor Draper had any property, other than that assigned by the indenture, which could be reached by

proceedings at law or in equity, to be applied to the payment of the debt to the plaintiff.

The prayer of the bill was that the defendants might be decreed to allow the plaintiff, as a creditor of the defendants Upham and Draper, to become a party to the indenture, and that thereupon it might be subject to and have the benefit of the provisions thereof, as if it had executed the same simultaneously with the other creditors; that the defendants might be decreed to do such acts and execute such papers as shall be necessary under the terms of the indenture to secure to the plaintiff its equitable share in the proceeds of the property thereby conveyed and assigned; and for further relief.

The bill was taken for confessed as against the defendants Upham and Draper.

The following facts were agreed: All the parties who executed the deed did so within two months of its date. The signatures of the creditors were obtained chiefly by Draper, acting for himself and Upham, with the latter's consent. The trustees did not attempt to procure signatures, nor were they requested by any person to do so; but the trust deed was put into their hands fully executed. The trustees had no knowledge that the plaintiff was a creditor of Upham or Draper until about August 1878. Several creditors of Upham and Draper had no notice of the trust until after the expiration of the two months limited in the deed, and have never become parties thereto; and other creditors were seasonably notified, but declined to become parties. The plaintiff received, and still holds, a promissory note indorsed by Draper and Upham, as alleged in the bill, and it has been duly protested, and the indorsers duly charged. New notes have been received from Draper and Upham by the creditors who are parties to the trust deed, as therein provided. The trustees have received the property assigned to them by Upham by the trust deed, but have received nothing of any value whatever from Draper.

On April 7, 1879, the trustees paid to the creditors who became parties to the deed a partial dividend of seven per cent upon the new notes held by them, and on August 21, 1879, a further dividend of five per cent of such new notes. At the time of the service upon them of the subpœna in this cause, the trustees held in their hands some property still undivided, which is of

uncertain value, and is not sufficient to make more than a partial payment upon the unpaid balance of the new notes already secured by the trust deed; but there is enough in their hands to pay a dividend to the plaintiff equal to what the other creditors who became parties to the trust have received; and, up to the present time, the trust would not have been closed, had this suit not been brought.

On April 26, 1878, Upham filed a petition in bankruptcy in the District Court of the United States for the District of Massachusetts, and on May 21, 1878, was adjudicated a bankrupt. A meeting of his creditors was duly called for June 11, 1878, notice of which was duly mailed to the plaintiff, as required by law, but was never received by the plaintiff. Upham received a discharge in bankruptcy in due form on September 2, 1878. His estate paid no dividend in bankruptcy, and the plaintiff never proved its claim.

The claim of the plaintiff was set forth by Upham in his schedule of unsecured creditors, filed with the petition in bankruptcy; and in his schedule of secured creditors, filed at that time, are given the names of various persons, signers of said trust deed, against whose names are written these words: "These claims are upon notes signed by J. W. Draper, or Hickory Coal Co., of Pottsville, Pa., and acceptances of J. H. Huddell & Co., or Huddell & Seitzinger, of Philadelphia, Penn., all indorsed by me. The claims are secured by property in the hands of Warner and Smith, of Boston, as trustees, conveyed February 2, 1876. The property is far less in value than the claims secured."

It appears by the schedule of unsecured creditors, that, at the time of filing his petition, Upham was indebted to a very large number of creditors, and to a very large amount upon notes of various persons, indorsed by him and maturing prior to February 2, 1876.

Hearing before *Field*, J., who reserved the case for the consideration of the full court; such decree to be entered as justice might require.

The case was argued in March 1881, by *H. D. Hyde & H. R. Bailey*, for the plaintiff, and by *J. B. Warner*, for the defendants; and reargued in March 1882, by *Hyde & Bailey*, for the plaintiff, and by *Warner*, (*J. J. Myers* with him,) for the defendants.

DEVENS, J. If we assume, in favor of the plaintiff, that the assignment to trustees was one to the benefit of which any creditor of Upham and Draper was entitled, the question is not, as stated by the plaintiff, whether a creditor, who has not executed a trust assignment within the time specified, can be allowed, under any circumstances, to come and sign after the time has elapsed, he having failed to execute the same because of accident, mistake or want of notice. The assignment to trustees was not an assignment of property simply for the benefit of creditors, of which they were entitled to avail themselves without, upon their own part, subjecting themselves to any obligations. The property in trust was thus placed by an instrument of February 1876, to secure the payment of certain new notes, which were given to those creditors who became parties to the instrument, and who covenanted not to sue their original demands unless default was made in the payment of such new notes at their maturity. This contract operated to give to the debtors a large extension of time, during which it was believed that their property and the profits anticipated therefrom would enable the trustees to pay the new notes. It was, on the part of the debtors, an agreement with certain creditors for an extension of time in the hope of avoiding failure or bankruptcy, and involved on the part of the creditors a substantial concession, as during the period that the new notes were maturing they could not enforce their demands. It is hardly possible to say that the plaintiff would have ever entered into the obligations imposed upon those creditors who became parties to the instrument, had the opportunity of signing been offered to it. It is certain that some who had the opportunity declined.

All those new notes have long since matured, the last becoming due in August 1878. One of the debtors has been discharged in bankruptcy, and the other has ceased to be a resident of this State. In May 1880, the plaintiff filed this bill. New notes such as the agreement contemplates cannot now be given, for the debtor cannot be compelled to assume liabilities from which he has been discharged by bankruptcy. Could this be done, the plaintiff itself cannot give the consideration in the extension of time which the debtors were to receive, and if it were possible, as one of them is in bankruptcy, it would be

useless. During all the period also that intervened between the date of the agreement and the filing of this bill, the plaintiff has preserved every legal right which it had against its debtors. The question properly stated is therefore whether a creditor may have the benefit of a trust assignment, when he cannot deliver the consideration therefor, and has enjoyed all the privileges of which the contract, had he entered upon it within the time specified, would have deprived him. It is a question probably of more importance to the other creditors than to the debtors, whether one who cannot now bear the burden they have borne, and who has enjoyed rights antagonistic to theirs, may now claim a portion of the trust property.

That conveyances by a debtor may be made to creditors by way of preference, or that they may be made to trustees for the benefit of creditors assenting thereto, and that such conveyances are valid, except when repugnant to the provisions of the insolvent or bankrupt laws, will not be controverted. *National Mechanics' & Traders' Bank* v. *Eagle Sugar Refinery*, 109 Mass. 38.

Where a time is specified in such a deed within which a creditor must become a party in order to avail himself of its benefits, the English courts have apparently been more indulgent than those of this Commonwealth in treating the time as not of the essence of the contract, and in permitting creditors to accede to or to execute the deed after the time limited has elapsed. *Phenix Bank* v. *Sullivan*, 9 Pick. 410. *Battles* v. *Fobes*, 21 Pick. 239. *Dedham Bank* v. *Richards*, 2 Met. 105. *Whitmore* v. *Turquand*, 1 Johns. & Hem. 444; *S. C.* 3 DeG., F. & J. 107. *In re Baber's trusts*, L. R. 10 Eq. 554. *Biron* v. *Mount*, 24 Beav. 642.

We have no occasion to compare these cases, or to consider whether the law in this Commonwealth has been held too strictly to the words in such an instrument by which time is limited. We certainly do not intend to intimate that it has. But the present case has the important element that the deed contemplated that the creditor would assume important obligations which would be for the benefit of the debtors, and also for the benefit of the other assenting creditors, as the arrangement made by it could not then be disturbed by any action of his. The English cases recognize that where a deed is a trust for the

benefit of such creditors as shall come in and become liable to the obligations entered into on the part of the creditors executing it, and when in order to become *cestuis que trust* they must do this, they cannot become such until they are bound by the covenants contained therein. If they cannot put themselves in the situation to give the consideration contracted for, they cannot entitle themselves to the benefit of the deed. *Biron* v. *Mount, ubi supra. Whitmore* v. *Turquand, ubi supra. Field* v. *Donoughmore,* 1 Dr. & War. 227. *Forbes* v. *Limond,* 4 DeG., M. & G. 298.

If it be true that the plaintiff accidentally failed to make this contract, or would have made it if notified of its right so to do, the fact still remains that it cannot give the required consideration for the contract, and that it has enjoyed rights it would not have possessed had it become a party to the contract.

*Bill dismissed.*