NATIONAL UNION BANK OF BOSTON vs. CHARLES W.
COPELAND & others.

Suffolk.   Jan. 28. — Feb. 26, 1886.   HOLMES & GARDNER, JJ., absent.

A debtor made an assignment in writing to trustees for the benefit of such creditors
as should execute the instrument of assignment within sixty days from the date
thereof, or within such further time as the trustees should allow "in and by a
writing" indorsed on the instrument of assignment.  By the terms of the assign-
ment the trustees were to convert the property of the debtor into money, and
to distribute the net proceeds *pro rata* among said creditors.  They also were
permitted to carry on the debtor's business of manufacturing so long as they
should deem expedient, and to compromise, without any limitation of time, any
claims against the debtor.  *Held*, that the term "a writing" did not limit the
trustees to the allowance of only one extension of the time in which creditors
could become parties to the extension.  *Held, also*, that if the trustees, through
inadvertence, did not indorse a renewal of time before one extension had ex-
pired, this did not render the granting of a subsequent extension illegal, if it
were reasonable, under all the circumstances of the case, that such extension
should be made.

BILL IN EQUITY, filed February 16, 1885, by a creditor of the
firm of Charles W. Copeland and Company, in behalf of itself
and other creditors who might become parties to the bill, against
the members of said firm, and of the firm of Stedman and Com-
pany, and the trustees under a certain indenture of trust, exe-
cuted by said firms, to determine who of the creditors were
entitled to share in the trust fund thereby created, and when
the right to become parties to the indenture had expired or
would expire, and that the fund might be distributed.

The Globe National Bank of Boston was allowed to intervene
as a party plaintiff; and William Quirin and others, members
of the firm of William Quirin and Company, were allowed to
intervene as parties defendant.

The case was sent to a master to find what creditors had exe-
cuted the trust deed, and, so far as practicable, when each credi-
tor executed the same, and the amount of the claim of each ; and
what action had been taken by the trustees to extend the time
for executing the deed.   The master filed a preliminary report,
stating the following facts to be found by him :

In July, 1883, the firms of Charles W. Copeland and
Company and Stedman and Company failed, owing $1,800,000.

Their creditors were over three hundred in number, and many of them resided out of the Commonwealth.

On August 27, 1883, a tripartite indenture was executed by the members of the said firms, as parties of the first part, and John Q. Henry, Augustus P. Martin, and William F. Lawrence, as parties of the second part. The parties of the third part were declared to be those creditors of the parties of the first part "who shall execute these presents within sixty days from the date hereof, or within such further time, if any, as said parties of the second part shall allow, in and by a writing hereon signed by them."

By the terms of the indenture, the parties of the first part conveyed to the parties of the second part all their stock in trade, claims, debts, and choses in action, and other property, "upon the trusts and for the uses and purposes following, and none other: that is to say, in trust to hold, manage, and take care of the same, and to convert the same into money, and for that purpose to collect said claims, debts, and choses in action, with power to compound for any of them, taking such part or thing for the whole as said parties of the second part shall deem expedient; and to sell, by private contract or public auction, for cash or on credit, and upon such terms, and at such time or times, and in such manner, as said parties of the second part shall think fit, the whole or any part of said property, and to assign, transfer, and convey the property so sold to the purchaser or purchasers thereof, by good and sufficient deed or deeds, or other conveyances or transfers, and receive the proceeds of said sales.

The indenture also contained, among others, these provisions:

" And full power and authority are hereby given to said trustees and the survivors and survivor of them, and whomsoever shall be trustees or trustee for the time being, if they or a majority of them shall deem it expedient so to do, and so long as and whenever they or a majority of them shall deem it expedient so to do, to carry on the business of manufacturing and selling boots and shoes, heretofore carried on by said firm of Charles W. Copeland and Company, at said Boston and elsewhere, and to use for that purpose the factories and buildings at Natick, Campello, North Abington, and West Medway heretofore occupied by said firm of Charles W. Copeland and Company in said business, and

the machinery, machines, tools, implements, materials, and goods in process of manufacture therein, and funds belonging to said trust and requisite for said purposes, and to purchase goods and new materials and supplies, and employ operatives, workmen, and agents, and take such measures as they may think requisite for carrying on the said business, and to sell and dispose of the product of said manufacturing and of said business, and to use the proceeds thereof and any other funds belonging to said trust to pay the expenses of carrying on the said business and of purchasing goods, materials, and supplies, and paying the wages and salaries of operatives and employees.

" And upon the further trust, to apply and dispose of all the net proceeds of the sales of the property hereby conveyed; also all the proceeds arising from carrying on said business, after paying the expenses of operating the same, and of purchasing materials and supplies, and paying wages and salaries as aforesaid; and also the net proceeds arising from the collection of claims, debts, and choses in action hereby assigned, as follows, to wit:

" First.   To pay such reasonable costs for drafting these presents, and consultations, advice, and services in respect thereto, as the trustees shall approve, and also reasonable charges, expenses, and costs of executing the trusts herein declared, (not previously paid out of the trust property,) including taxes, insurance premiums, and proper repairs on any of the assigned premises, and a reasonable compensation to the trustees for their services in and about the trust.

" Second.   To distribute and pay the remainder of said proceeds to and among the parties of the third part ratably, in proportion to the amounts owing by said firms or either of them, or by said Charles W. Copeland, to each of them respectively, (whether now or hereafter payable,) without preference or priority, such payments to be made when and as often as the funds in the hands of the trustees will warrant."

" Provided also, and it is further agreed, that said trustees may also compromise any debt or debts of said parties of the first part, or either of them, or may procure the same to be discharged, by paying therefor any amount which said trustees may deem for the best interests of all concerned, in money, goods, or

other property held in trust by them under this instrument, and may contest and defend any suit or action now pending, or which may hereafter be commenced."

" And we, the undersigned creditors, parties of the third part, do severally and respectively agree to accept and take, and do hereby accept and take, in full payment, satisfaction, and discharge of all and singular our debts, demands, claims, actions, and causes of action whatsoever (except for or on account of promissory notes made or indorsed by the firm of F. Shaw and Brothers) against said Copeland, or said firms of Charles W. Copeland and Company and Stedman and Company, or any or either of them, existing at the date hereof, whether payable now or at some future time or times, what shall be payable to us respectively under the provisions of this instrument out of the proceeds of the estates and property hereinbefore assigned and conveyed in trust.

" And we do, and each and every one of us does, absolutely release, acquit, and forever discharge said Copeland, and said firms of Charles W. Copeland and Company and Stedman and Company, of and from all such demands, claims, actions, and causes of action (except for or on account of promissory notes made or indorsed by said firm of F. Shaw and Brothers as aforesaid), and these presents shall be pleadable in bar thereof, except as herein otherwise provided.

" And we, the undersigned creditors of said Copeland, and said firms of Charles W. Copeland and Company and Stedman and Company, or any or either of them, holders, respectively, of promissory notes made or indorsed by the firm of F. Shaw and Brothers to the amounts set opposite our respective signatures hereto, parties of the third part, do, in consideration of the making and delivery hereof by said parties of the first part, and each of them, (each of us contracting only with reference to the note or notes held by us respectively,) that he will not, nor shall any one else, levy upon the body, goods, or estate of said parties of the first part, or any or either of them, any execution or other process which may be obtained upon any judgment or decree founded in whole or in part upon any of the said promissory notes held by us respectively, made or indorsed by said firm of F. Shaw and Brothers.

" All suits, actions, petitions, and attachments, and all proceedings in insolvency against said parties of the first part, or any or either of them, now pending, shall be discontinued and dissolved by the plaintiffs and petitioners therein, parties hereto.

" Provided always, and these presents are upon the express condition, that in case a petition under the insolvent laws of Massachusetts shall within six months from the day of the date hereof be filed by or against said firm of Charles W. Copeland and Company before all the property hereby assigned and conveyed shall have been sold and converted into money and the proceeds thereof disposed of and distributed pursuant to the provisions of this instrument, and a warrant in insolvency shall be issued upon such petition, then this instrument shall, except as to property sold and collections made and proceeds previously disposed of and distributed under this instrument, and except as to other acts previously done thereunder, be void, and the said trustees and the survivors and survivor of them, and their successors or successor, being trustees or trustee for the time being, shall thereupon transfer and deliver to the person or persons who shall be chosen assignee or assignees of the estate of said firm of Charles W. Copeland and Company, under the insolvent laws of said Commonwealth, all the property hereby assigned or conveyed, and the proceeds thereof, to which such assignee or assignees shall be entitled under the laws of Massachusetts, and which may then remain in said trustees or trustee undisposed of and undistributed, pursuant to the terms of this instrument.

" And in the event of such warrant being issued as aforesaid, the foregoing releases and discharges, and the covenants and agreements not to levy execution or other process as aforesaid, shall be null and void, but the dividends which shall have been paid upon the respective debts owing to the several parties of the third part shall merely reduce the said debts to the extent of the amount of such payments, and said debts so reduced shall be valid and enforceable against the respective parties owing the same, and provable in insolvency."

The trustees have received, for the purposes of the trust, money and property which has since been converted into money, and they now hold under the trust about $300,000.

On or before October 25, 1883, (the time of the expiration of the sixty days,) the trustees, by a writing on said trust deed, extended the time within which creditors might execute the same to January 24, 1884; and subsequently, by a writing on said trust deed, bearing no date, extended or assumed to extend the time to August 26, 1884; and subsequently, on August 26, 1884, extended or assumed to extend the time to February 26, 1885; and on February 26, 1885, extended or assumed to extend the time to June 26, 1885; and on June 25, 1885, extended or assumed to extend the time to December 26, 1885.

Creditors to the amount at least of $130,000, most of whom held unindorsed paper of the debtors, or merchandise accounts against them, became parties to the deed within the original term of sixty days. Other creditors, in one form and another, during the terms of the several extensions, or attempted extensions, have become or attempted to become parties thereto. The creditors who have so become or claim to have become parties to the deed are two hundred and forty-nine in number, and represent an indebtedness of about $1,300,000.

Up to and including January 24, 1884, creditors to an amount not exceeding $400,000 had executed the trust deed, in one form or another.

The master found that the said second alleged extension, that is, the extension from January 24, 1884, to August 26, 1884, was not indorsed upon said instrument, or executed in any form whatever, until May 5, 1884; that the failure to indorse this extension until this time was inadvertent; that when indorsed, it was regarded by the trustees as rightfully indorsed, and as a valid extension, and that, although often out of mind during the course of the complications hereinafter reported, it had always been the desire and intention of the trustees and the debtors, whenever they had it in mind, to keep the trust indenture open to admit all creditors who wished to come in under it and participate in the fund; that from the date of the trust deed up to the present time, in dealing with creditors relative to becoming parties to the deed, the trustees and debtors had always acted on the assumption that it was open for creditors to become parties thereto, and believed that it was so open; that the trustees made and indorsed said second extension upon the trust

indenture without attaching special importance to the time when it was done, and hence kept no record of the time.

On October 4, 1883, a petition in insolvency was filed in the Court of Insolvency for Suffolk County by the Shawmut National Bank and the Market National Bank, both of Boston, against Charles W. Copeland and Arthur W. Stedman, as composing the firm of Charles W. Copeland and Company. Public notice of this petition was given as required by law, and subsequently the Merchants' National Bank of Bangor, the Lincoln National Bank, and the Attleborough National Bank joined as petitioning creditors. The debtors resisted an adjudication upon this petition, and numerous hearings were had, the matter being continued from time to time until March 21, 1884, when the petition was dismissed, upon written consent filed by the petitioning creditors.

This dismissal of the insolvency proceedings did not seem to have been known by creditors generally until May, 1884, and on May 24, 1884, a petition was filed by the National Bank of Redemption of Boston, and others, seeking to have the proceedings in insolvency restored. On July 24, 1884, a hearing was had on said petition to restore, and the same was dismissed by the insolvency court. On December 6, 1883, the debtors made an offer of composition, and drew up a deed bearing that date, which deed was sent to each creditor, with a notice from the debtors asking creditors to sign, and a notice from a committee of creditors recommending the composition. The debtors made active efforts to secure the assent of creditors to this deed of composition, by correspondence and by personal solicitation. These efforts were continued for from four to six months from the date of the deed, and then abandoned; they were made with the co-operation of the trustees, and creditors to the amount of several hundred thousand dollars assented to said composition before its abandonment.

About $1,200,000 of the indebtedness of these debtors is upon their notes indorsed by the firm of F. Shaw and Brothers.

The firm of F. Shaw and Brothers failed with Copeland and Company, and made an assignment of all their property in trust for creditors. The debts and assets of F. Shaw and Brothers were very large in amount, and the affairs of Copeland and

Company were much complicated with those of the former firm, and creditors of Copeland and Company holding also the name of F. Shaw and Brothers were much embarrassed, and hesitated to execute the trust deed of Copeland and Company before receiving their dividends from the estate of F. Shaw and Brothers.

The affairs of F. Shaw and Brothers were not settled until February, 1885, and a dividend on claims against that estate was not paid until March, 1885, when a dividend of thirty per cent upon the full face of the claims was paid. Some of the paper of Copeland and Company also bore the name of Hoffheimer and Company and of Toller and Company, both of which firms failed with Copeland and Company, and made assignments for the benefit of their creditors.

The creditors were delayed in executing the trust deed by the complications of this estate with that of F. Shaw and Brothers, Hoffheimer and Company, and Toller and Company, by the insolvency proceedings, and by the composition proposed by the debtors, which made much confusion and uncertainty in the minds of creditors, and made their delay reasonable; and the extensions were made at the request of the debtors and of large numbers of creditors. All the extensions were reasonable as matter of fact, if allowed by law, and were in the interest of a majority of the creditors.

The master further reported, that it would be very difficult to determine when each creditor signed the indenture, as no record was kept from which these dates could be fixed; and that, in view of the fact that the determination of these dates would become unnecessary if the court should hold the extensions of time after January 24, 1884, to be legal, he made only a preliminary report. The master further stated, that objection had been made before him to the proofs of certain claims, which, at the request of the parties, he reserved for a subsequent report.

The case was heard by *C. Allen*, J., and reserved for the consideration of the full court.

In favor of the authority of the trustees to extend the time as they had done, arguments were made, or briefs submitted, by *J. B. Warner*, for the plaintiff; *L. L. Scaife*, for the Globe National Bank; *B. F. Brooks & H. G. Nichols*, for the trustees; and *A. Hemenway*, for Copeland and Company.

Against such authority, arguments were made by *G. W. Morse & F. A. Wyman*, for Quirin and Company.

DEVENS, J.   The case presented involves the discussion of two questions:

1. Whether the trustees under the deed of assignment made to them for the benefit of Charles W. Copeland and Company had power to allow further time for creditors to become parties thereto by more than one writing indorsed on the deed.

2. If they had such power, whether it was well exercised after the first extension had been made to January 24, 1884, by the further extension of time until August 26, 1884, indorsed in writing on the deed on May 5, 1884.   Since this time, the subsequent extensions have been made, each before the expiration of the time previously limited, so that there can be no question as to their formal regularity if the second extension was proper.

It is the contention of the creditors who executed the deed on or before January 24, 1884, that the power of extension expired on that date, and that the attempted extensions subsequently made are invalid, both for want of authority to extend, and by reason of non-compliance with the terms of the deed of assignment in the mode adopted.

It cannot be controverted that, when the terms of an assignment of the nature of that here in question explicitly confine its operation to those creditors only who shall become parties thereto within a limited time, the disposition of the courts in this Commonwealth has been more strict than that of the English courts in treating the time thus fixed as of the essence of the contract, and in refusing to creditors the privilege of acceding to or executing the deed after such time has elapsed.   While this is conceded in *First National Bank of Easton* v. *Smith*, 133 Mass. 26, which is the latest case in which the subject is adverted to, the decision of that case is put wholly on the ground that it was there impossible for the creditor who had filed his bill four years after the deed of trust was made, praying to become a party thereto, then to give the consideration which the deed called for.   *Phenix Bank* v. *Sullivan*, 9 Pick. 410.   *Battles* v. *Fobes*, 21 Pick. 239.   *Dedham Bank* v. *Richards*, 2 Met. 105. *Dunch* v. *Kent*, 1 Vern. 260.   *Spottiswoode* v. *Stockdale*, G. Coop. 102.   *Collins* v. *Reece*, 1 Collyer, 675.   *Watson* v. *Knight*, 19

Beav. 369. *Raworth* v. *Parker*, 2 K. & J. 163. *Whitmore* v. *Turquand*, 1 Johns. & Hem. 444. In other of the United States, where there is more conflict of opinion, it would appear that the weight of authority is in accordance with the views expressed in the English cases. *Bank* v. *Partee*, 99 U. S. 325. *De Caters* v. *De Chaumont*, 2 Paige, 490. *Owens* v. *Ramsdell*, 33 Ohio St. 439. *Pfeifer* v. *Dargan*, 14 S. Car. 44. *Pearpoint* v. *Graham*, 4 Wash. C. C. 232. *Coe* v. *Hutton*, 1 S. & R. 398.

We have no occasion in the case at bar to review our cases on this subject, or to compare them with those which have been elsewhere decided. The assignment in question contained a provision for an extension of time, the construction of which must control its operation. It is contended that the right to allow further time by " a writing " imports only a single act, and no more, and that, the time having been extended to January 24, 1884, this right on the part of the trustees was entirely exhausted; and further, even if an extension by such single act might have been made of sufficient length to include the last extension as actually made, if such extension was reasonable, that it could not be done by a succession of acts. If such be the strict grammatical construction of the phrase "a writing," it might properly be said that such construction is not to be followed when it would lead to a result at variance with other and apparently controlling provisions or objects of the deed. But the particle " a " is not necessarily a singular term ; it is often used in the sense of " any," and is then applied to more than one individual object. There is no reason why a construction so limited should be adopted as that which would deprive the trustees of the power to make extensions which the exigencies of the business entrusted to them should require, and which would compel them to determine arbitrarily and in advance when the time should finally expire. The limitation of time is usually inserted to prevent, on the part of creditors, unreasonable delay, and to facilitate the closing up of the estate. It is important to observe, therefore, that this assignment did not contemplate an immediate distribution of the property. The trustees were permitted to carry on the business in manufacturing and selling boots and shoes as long as they deemed prudent, and for this purpose to use the trust funds and trust property. They

were further authorized to compromise any debts against the assignors, in money, goods, or other property held in trust by them under the deed, and no limitation was placed upon the time within which this might be done. Unless imperatively demanded, no such construction should be given to the provision in regard to extension of time as should prevent the trustees from doing this by permitting the creditors to prove their claims so long as the fund is not distributed. It can hardly be necessary, to effect such a compromise, that the trustees should be compelled themselves to withdraw from the fund a sum equal to the dividend and pay it to such creditors upon obtaining a release from them, instead of permitting them to prove their claim when they were willing to be satisfied with the dividend. The largest powers are confided to the trustees in protracting the business and managing the funds, property, and goods confided to them; it was the object of the assignors that all creditors should become parties who were willing to release their debts and accept their proportion of the property assigned in settlement thereof. It is certainly not consistent with this object that a single extension of time alone could be granted by the trustees, when it was reasonably to be anticipated that contingencies would arise which would postpone any final adjustment of the claims against, or disposition of the property of, the estate.

It appears that so many complications arose as to the estate and the property assigned that creditors might well be confused in determining whether the plan proposed could be carried through, or whether the estate would be settled finally by some different compromise, or through the Court of Insolvency, and that the various extensions of time have not exceeded what was reasonable under all the circumstances.

Some of the creditors contend that, if the provision on this subject is construed as authorizing repeated extensions, it is fraudulent and void, and that, being an independent clause, it may and should be rejected, while in all other respects the assignment may be sustained. But the right given to the trustees to extend the time within which creditors may become parties, even if it may be exercised more than once, is not indefinite nor unlimited, but is a right thus to extend for a reasonable time,

having regard to all the circumstances of the case. It is not a purely arbitrary power, but one with which the trustees are invested that they may accomplish the objects of the trust. If they persistently continued to extend the time after all creditors had ample opportunity, with full knowledge of the condition of affairs, to become parties, and practically refused to close the trust when its objects were accomplished, and to distribute the assets, we do not think the creditors who had assented would be without remedy on proper application to this court. Even if, in the first instance, the expediency or propriety of measures to be adopted in the management of a trust is to be determined by the trustees, yet an abuse of their powers may be inquired into and remedied by a court of equity. *Woodward* v. *Marshall,* 22 Pick. 468. To exercise arbitrarily, and without regard to the rights of the creditors, a power to extend the time of proof of claims, conferred upon the trustees in order to carry out the objects of the trust and only as incident to this, would be to abuse it.

It is further urged, that, if it be conceded that the time might be extended repeatedly, this could not imply a power to reopen the extension after it had once expired, without any additional extension having been made; that the extensions must be made continuously, and that the power is exhausted if a break therein occurs. It is found that both creditors and trustees, after January 24, 1884, when the first extension expired, treated the right to become parties to the assignment as still existing, and the time to do so as extended, although no indorsement in writing to that effect was made on the assignment deed until May 5, 1884. It would be unfortunate if we were compelled to hold that, under such circumstances, the failure to indorse this extension would operate to deprive those creditors who subsequently signed the deed of their right to do so. Nor can it be said, upon these facts, that the creditors who became parties before January 24 present any strong equitable claims to appropriate the entire trust fund assigned, to the amount, at least, of their respective debts.

But the duty and authority of the trustees to indorse the extension in writing are intended not so much to prescribe the mode in which the extension shall be made, as to prescribe the method

by which it shall be shown that the trustees have assented that the creditors shall be allowed to prove, notwithstanding the time originally provided for has passed. We have heretofore called attention to the fact, that the trustees may at any time, while their trust is unfulfilled, compromise with creditors, as tending to show that they may extend the time for proof to any reasonable period. It equally indicates that, if the time limited by an extension has actually expired, and has proved insufficient for the proof of claims, in the judgment of the trustees, reasonably exercised, in view of all the contingencies of the case, they may still further extend it, in order to accomplish the object of the trust. While the cases in this Commonwealth give force to the limitation of time prescribed in a deed, and treat it as essential, where a definite time is fixed within which a creditor must come in, that he should assent within that time, this affords no reason for any strict construction of a provision giving to trustees the power to extend, but rather the reverse. *Phenix Bank* v. *Sullivan, ubi supra. Battles* v. *Fobes*, 21 Pick. 240. *Dedham Bank* v. *Richards*, 2 Met. 113.

In the cases referred to, it is deemed that the creditors, by their assent within the time limited, have vested rights to share in the assigned property without further participation, as their agreement *inter sese* and with other parties to the instrument is that the property shall be divided between those who come in within the time limited. But where the agreement authorizes an extension, it is also true that they have agreed to share with all who may come in within the time as it may be extended by the trustees in the proper exercise of their authority.

It is found that the failure to indorse the second extension before May 5 was inadvertent, that it had always been the desire and intention of the trustees and debtors, whenever they have had the subject in mind, to keep the trust indenture open to admit all creditors who might wish to come in and participate, and that, from the date of the trust deed up to the time of the hearing by the master, in dealing with creditors relative to becoming parties thereto, the trustees and debtors always acted on the assumption that it was open for this purpose, and believed that it was so open. When power to extend the time of proof is given to carry out the objects of the trust, and to achieve

the intention of the assignor, we should be reluctant to hold that an accident such as, in the case at bar, was the failure by the trustees to indorse in writing the extension, should destroy their power, and thus materially injure or wholly disappoint those entitled to the benefits intended. But we are not disposed to place the matter upon so narrow a ground. So long as the trust remained unfulfilled, even if the original extension had expired, the proper construction of the provision relating thereto, in view of the objects of the deed and the other powers conferred thereby, entitled the trustees to make a further extension, provided the same was reasonable under all the circumstances. The plaintiff was therefore entitled, and was properly permitted, to become a party to the trust, although after the first extension of time, and is entitled to participate in the distribution of the trust fund.

The questions whether the trust shall be declared closed, and whether the trustees shall be ordered now to distribute the fund, are not presented upon the evidence as it has been taken.

*Decree accordingly.*