BEVERAGES INTERNATIONAL, LTD. *vs.* ALCOHOLIC BEVERAGES
CONTROL COMMISSION & another.[1]

Suffolk.  June 9, 1987. — September 22, 1987.

Present: GREANEY, C.J., ARMSTRONG, & BROWN, JJ.

*Alcoholic Beverages Control Commission. Alcoholic Liquors,* Alcoholic
Beverages Control Commission, Wholesaler. *Statute,* Construction.

The Alcoholic Beverages Control Commission did not err as matter of law
or public policy in so interpreting the language of G. L. c. 138, § 25E,
making it unlawful for a liquor supplier to refuse to sell to any licensed
wholesaler to whom it had made sales "during a period of six months
preceding any refusal to sell," as to require the six months of regular
sales to immediately precede the refusal to sell, and consequently, in
determining that § 25E was inapplicable to a dispute between a wholesaler
and its supplier in which the parties' regular course of dealing had been
interrupted for ten months prior to the supplier's refusal to fill the
wholesaler's order. [710-713]

CIVIL ACTION commenced in the Superior Court Department
on December 16, 1985.

The case was heard by *George C. Keady, Jr.,* J.

*James L. Quarles, III,* for the plaintiff.

*William I. Cowin (James C. Gross* with him) for Schenley
Affiliated Brands Corporation.

*Douglas H. Wilkins,* Assistant Attorney General, for Alcoholic Beverages Control Commission.

BROWN, J.  Beverages International Ltd. (Beverages), holder of a liquor wholesaler's license under G. L. c. 138, § 18,
claims that § 25E of that chapter prohibits a certain liquor
wholesaler from summarily refusing to sell to it. The defendants
are the Alcoholic Beverages Control Commission (commission) and Schenley Affiliated Brands Corporation (Schenley),

---

[1] Schenley Affiliated Brands Corporation.

a liquor wholesaler and holder of a certificate of compliance issued pursuant to G. L. c. 138, § 18B. The appeal is from a judgment, adverse to Beverages, entered in the Superior Court after review under G. L. c. 30A, § 14, of a decision of the commission.

A judge of the Superior Court had reversed and remanded a decision of the commission adverse to Beverages for further fact finding. After rehearing, the commission made additional findings of fact and reaffirmed its original decision. Beverages then filed an amended complaint, again seeking review of the commission's decision. A judge of the Superior Court entered judgment for the defendants.

The facts as found by the commission are not disputed. From 1983 until May, 1984,[2] Beverages made regular and substantial purchases of a brand-name Scotch whiskey from Schenley. On or about May 4, 1984, Beverages cancelled its outstanding orders with Schenley and placed no further orders until March 1, 1985. An involuntary petition in bankruptcy was filed against Beverages on July 6, 1984. The bankruptcy was converted into a voluntary Chapter 11 proceeding on July 18, Beverages remaining in possession and control. Its reorganization plan was confirmed on January 28, 1985. From May 4, 1984, until after Beverages' reorganization, Beverages had the legal capacity to make purchases from Schenley. During that time, there were periods when Beverages was financially able to make substantial purchases but chose for business reasons not to buy from Schenley.[3]

---

[2] In a related proceeding a United States Bankruptcy Court judge found that the business relationship extended over a period of seventeen years.

[3] In its decision after remand, the commission states that whether it would have been commercially feasible for Beverages to make such purchases is not relevant to the commission's final decision. It goes on, however, to say that "[w]here the wholesaler *itself* ceased to make purchases, it cannot avail itself ten months later of the provisions of [G. L. c. 138, §] 25E to recreate a business relationship that *it dissolved*" (emphasis supplied). The commission also states that, because Beverages had the legal capacity to place orders during the period in question, the commission did not reach the question whether Beverages would have been entitled to protection under § 25E had it lacked such capacity. Beverages asserts that it did not intend to terminate its course of dealings with Schenley, and that this fact

Pursuant to the reorganization plan, Beverages was sold. After emerging from bankruptcy under new ownership, Beverages placed an order for the brand-name Scotch whiskey with Schenley on March 1, 1985. Schenley refused to fill the order, informing Beverages, by letter dated March 21, 1985, that it would "no longer be selling any of our product lines to Beverages International." Beverages then requested, pursuant to G. L. c. 138, § 25E, a hearing before the commission to determine the rights and obligations of the parties under that statute.

After a hearing, the commission on November 19, 1985, rendered a decision holding that G. L. c. 138, § 25E, was inapplicable because of the "absence of a six month period of sales recent to the protested refusal" as required by the statute. Beverages' appeal was dismissed.[4]

The question raised by Beverages on appeal concerns the interpretation of a phrase in G. L. c. 138, § 25E, as amended through St. 1982, c. 627, § 10. The pertinent part of the statute is the first paragraph, which reads:

> "It shall be an unfair trade practice and therefore unlawful for any . . . wholesaler of any alcoholic beverages, to refuse to sell, except for good cause shown, any item having a brand name to any licensed wholesaler to whom such . . . wholesaler has made regular sales of such brand item *during a period of six months preceding any refusal to sell.*" (Emphasis supplied.)

The parties dispute the meaning of the italicized language. The defendants argued below, and here, that the required six months of regular sales must *immediately* precede the supplier's

---

distinguishes its case from those where a distributor voluntarily dissolves its relationship with a supplier. However, although Beverages in its statement of facts asserts that during the bankruptcy proceedings it "was neither able nor allowed to purchase new inventory," it makes no argument that the findings of the commission were not based on substantial evidence.

[4] The commission's decision after remand was based on the same ground.

refusal to sell. Thus, they contend, § 25E does not apply to Beverages' situation, since a ten-month hiatus interrupted the regular course of dealing between Schenley and Beverages.

Beverages, on the other hand, contends that § 25E only requires a six-month "trial period" of regular sales at any time before the supplier refuses to sell. Since Schenley admittedly sold brand-name liquor to Beverages on a regular basis for more than six months (from March, 1983, to May, 1984), Beverages concludes that G. L. c. 138, § 25E, applies and that Schenley could discontinue sales only for "good cause shown" and upon following the procedures set out in the second paragraph of the statute, i.e., a 120-day grace period before termination and a "good cause" hearing before the commission. (Not one of the parties suggests that Schenley has shown cause or complied with those procedures).

It appears that this aspect of § 25E has not yet received judicial interpretation by an appellate court. In the circumstances, while the commission's interpretation is not binding on the court, a reasonable construction of a regulatory statute adopted by the enforcing agency is entitled to some weight. *Amherst-Pelham Regional Sch. Comm.* v. *Department of Educ.*, 376 Mass. 480, 491-492 (1978). See *Casa Loma, Inc.* v. *Alcoholic Beverages Control Commn.*, 377 Mass. 231, 235 (1979). See also *Great Atl. & Pac. Tea Co.* v. *License Commnrs. of Springfield*, 387 Mass. 833, 837 (1983), citing *Connolly* v. *Alcoholic Beverages Control Commn.*, 334 Mass. 613, 618 (1956) (Alcoholic Beverages Control Commission has "specialized knowledge of the problems affecting the regulation of the sale of alcoholic beverages"). We think that the commission's interpretation is reasonable and sound. See *Howard Johnson Co.* v. *Alcoholic Beverages Control Commn.*, *ante* 487, 490 (1987) ("agency charged with the administration of a statute may, in a decision, define or interpret statutory terms, at least in the first instance"). Cf. *Amoco Oil Co.* v. *Dickson*, 378 Mass. 44, 50 (1979);[5] *Union Liquors Co.* v. *Alco-*

---

[5] "It is simply not clear that in all instances the public interest would be served by requiring suppliers to continue marketing agreements with dealers whose business operations had been and would be chronically and irremediably unprofitable to the suppliers." 378 Mass. at 50.

*holic Beverages Control Commn.,* 11 Mass. App. Ct. 936, 938 (1981).[6]

Beverages argues that the commission's interpretation is inconsistent with the "plain language" of the statute, pointing to the use of the indefinite article "a" rather than "the" in the statute. Two venerable cases are cited in support of this contention, *Palmer* v. *Kellogg,* 11 Gray 27, 28 (1858) (cited as indicating that the article "the" denotes the singular), and *National Union Bank of Boston* v. *Copeland,* 141 Mass. 257, 266 (1886) (cited for the proposition that "a" is commonly used as a synonym for "one" or "any"). Neither is determinative of the question in this case. Both occur in totally different contexts from the present. Further, the *National Union Bank* case (interpreting a provision in a deed) holds that "the particle 'a' is *not necessarily* a singular term . . ." (emphasis supplied), and holds in addition that a strict grammatical construction of a phrase should not be followed if it leads to a result "at variance with other and apparently controlling provisions or objects of the [instrument being interpreted]." *Ibid.*[7]

Reading the language in question here in context leads to the conclusion that the Commission's interpretation is the correct one. The interpretation suggested by Beverages would render the phrase "preceding any refusal to sell" surplusage, in violation of the rule of statutory construction that, "wherever possible, no provision of a legislative enactment should be treated as superfluous." *Casa Loma, Inc.* v. *Alcoholic Beverages Control Commn.,* 377 Mass. at 234. *Adamowicz* v.

---

[6] "A provision for cancellation in the event of a change of control of one's distributor or supplier is a reasonable method of ensuring freedom for a supplier to select a new distributor (or a wholesaler to select a new supplier) . . . ." 11 Mass. App. Ct. at 938.

[7] Another case cited by Beverages, *Faulks* v. *Schrider,* 114 F.2d 587, 590 (D.C. Cir. 1940), held that the phrase "a period of fifteen years before the bringing of the action" in a District of Columbia Code provision providing a method of establishing title by adverse possession did not refer solely to the fifteen-year period immediately preceding commencement of the action; this interpretation was based in part on reference to another code provision, the applicable limitation statute. Again, as the context is different, the interpretation is not dispositive here.

*Ipswich,* 395 Mass. 757, 760 (1985). Beverages argues that these words were inserted to make it clear that, although the second paragraph of § 25E provides that the commission may order a supplier to continue to sell to a wholesaler protected under the first paragraph, such sales are not to constitute part of the required six-month period. Apart from the difficulty we have in seeing the need for such clarification, that argument is particularly unpersuasive as to the purpose of the subject phrase. Paragraphs one and two are structurally separate: the former defines the protected relationship, while the latter sets out the termination procedure where a protected relationship exists.

In sum, Beverages has presented no convincing argument that the commission was wrong, either as matter of law or as matter of public policy, in its interpretation of the statutory provision at issue.

*Judgment affirmed.*