## BANK *v.* PARTEE.

A., a married woman, offered to pay one-half of her indebtedness in land in B. County, Mississippi, at $10 per acre, and give her notes secured by mortgage on her land in C. County, in that State, for the remainder. A large number of her creditors having accepted the offer, she conveyed her land to D. in trust, but provided in the deed that if any of them should fail within ninety days from its date "to signify in writing their acceptance of the terms of settlement and payment of their claims or debts," they should "be considered as refusing the same," and be debarred from the benefits of the deed. Among

the creditors accepting the offer was E., who surrendered the notes held by him and took the new ones. After the ninety days had expired, A. expressed her hope that all her creditors would come in, and authorized her agent, in case they did, to receive her old notes and deliver the new ones in exchange therefor. At the time of said offer, A. represented that the land was incumbered only by a small annuity, and concealed the fact that a judgment by default had been obtained in C. County by F. against her and her husband. On execution sued out on that judgment, G., her son, and said F. purchased her land in that county. E. thereupon filed his bill to set the judgment aside, or to obtain leave to redeem the land. *Held,* 1. That E. having acted in pursuance of the original offer of A., the condition in her deed as to a written acceptance within ninety days did not apply to him. 2. That the condition being only in the nature of a penalty against the creditors, not assenting in the prescribed way, could be, and in fact was, waived by A. 3. That — following the decisions of the Supreme Court of Mississippi on the code of that State — unless a married woman has a separate estate there situate, she is, as to her contracts, subject to the disability of coverture, and that a creditor suing her there must aver in his bill or declaration that she has such an estate, and that his debt is a charge upon it, or ought to be paid out of it. 4. That, as the record of the judgment in satisfaction of which the land was sold does not disclose the fact that A. had such an estate, and that it was liable for her debts, the judgment was void. 5. That F. and G. were not innocent purchasers.

APPEAL from the Circuit Court of the United States for the Southern District of Mississippi.

*Mr. William A. Maury* for the appellants.

No counsel appeared for the appellees.

MR. JUSTICE FIELD delivered the opinion of the court.

In July, 1866, the defendant, Sarah D. Partee, wife of William B. Partee, then a resident of Mississippi, being indebted in the sum of $125,000, and unable to pay the amount, submitted to her creditors a proposition in writing for settlement. She represented that the late war had caused her a loss of over $300,000, leaving her indebted as mentioned, with no resources except lands, which would not then sell for half of their value, or for half of her indebtedness. In order, therefore, to place all her creditors on the same footing, some of them having brought suits for sums amounting to about $14,000, she offered to pay one-half of her indebtedness in lands in Tallahatchie and Sunflower counties, Mississippi, at $10 per acre; and, for the remaining half, to give her notes in equal sums, payable in January, 1867, 1868, 1869, 1870, and 1871, with

interest at eight per cent per annum, secured by a mortgage on the residue of her lands in Yazoo County, then under cultivation. This proposal was afterwards modified so as to postpone for one year the maturity of the several notes.

To secure confidence in the papers to be drawn to close the transaction, she selected gentlemen well known in Yazoo City to see to a proper execution of a deed of trust, and to act as trustees, or to select proper persons for that position. And she stated that Messrs. Hyams and Jonas, lawyers of high character in New Orleans, would attend to any of the business which the creditors might choose to place in their hands, and to the distribution of the new notes after they were executed. Accordingly, in November, 1866, a deed was executed by Mrs. Partee and her husband to one Robert Bowman, conveying to him the lands mentioned, upon the following trusts : 1st, to hold the lands in Tallahatchie and Sunflower Counties for the benefit of such creditors as should accept the same at $10 an acre in payment of one-half of her indebtedness to them, or if a majority of the creditors should desire it, to sell the same and divide the proceeds, or to convey to each of such creditors his proportion of the lands ; and, 2d, in case of default in the payment at maturity of the notes executed upon the settlement, to sell the lands lying in Yazoo County, or so much as might be necessary to pay them, and apply the proceeds to their payment.

The deed contained a clause providing that if any of the creditors should fail within ninety days from its date " to signify in writing their acceptance of the terms of settlement and payment of their claims or debts," they should " be considered as refusing the same," and be debarred from the benefits of the deed.

The instrument was properly executed, stamped, and registered. After its registration, it was delivered with the new notes, signed by Mrs. Partee and her husband, to Messrs. Hyams and Jonas, for the purpose of carrying out the proposed settlement and securing the acceptance of its terms. Many of the creditors had previously assented to its terms, and after the deed was executed they surrendered their old notes for the new notes. Other creditors came in afterwards, and in a simi-

lar way gave up their old notes and took the new paper. It does not appear, however, that any of them signified in writing their acceptance of the terms of the settlement within the ninety days mentioned in the deed.

It appears, also, that before the deed was executed, namely, in April, 1866, one James Stewart had brought suit against Mrs. Partee and her husband on a promissory note made by her, and in June following had obtained judgment by default against them for a sum exceeding $6,000. Upon this judgment execution was issued, and in January, 1869, the lands in Yazoo County embraced by the trust-deed were sold and purchased by Stewart and a son of Mrs. Partee. When the settlement was proposed, the existence of this judgment was concealed from Messrs. Hyams and Jonas, who acted, as already stated, for Mrs. Partee in securing the assent of creditors. The representation then made was that the lands were incumbered only by a small annuity.

The present suit is brought to set aside this judgment of Stewart, or to obtain leave to redeem the land sold under it; to remove the trustee, who is charged with certain fraudulent practices in connection with the trust property, and to have a new trustee appointed; and to enforce the trusts of the deed. It is unnecessary for the disposition of the present appeal to state in detail the various allegations of the bill or of the several answers of the defendants, as the case appears to have been decided upon the supposed impediment to the relief prayed by reason of the provision excluding creditors from the benefits of the deed, who failed, within ninety days from its date, to indicate in writing their acceptance of the terms of settlement; and by the sale of the property in Yazoo County under the judgment of Stewart. Our consideration is limited, therefore, to the effect of that provision upon the rights of the complainants, and to the validity of that judgment.

1. With reference to the provision, it is to be observed that it was not mentioned in the proposition for settlement made in July, 1866. That prescribed no period within which its terms should be accepted; and before the execution of the deed, as already stated, and as recited in it, many of the creditors had assented to them. To such creditors — and they embrace the

complainants in this suit — the provision could not have been intended to apply. No purpose could have been subserved in requiring from them any further expression of assent to the settlement. As to them nothing further was necessary to complete the transaction than the surrender of the old notes and the acceptance of the new notes in their place; and this, as stated, was done.

As to the creditors who had not then acceded to the proposed settlement, it was important to fix some period within which they should come in. To quicken their action the provision was inserted. Their acceptance in writing was not a condition precedent to the vesting of the property in the trustee for their benefit, nor was it a condition upon which the trust was to be executed. It was at best only a condition subsequent in the nature of a penalty against creditors not assenting in the prescribed way, and could be waived by the grantors; and was in fact waived by them. Long after the lapse of the period prescribed they expressed to their agents a hope that all the creditors would come in; and they authorized them to receive from creditors their old notes and to deliver in exchange new notes in their place for one-half of their amount; and when this was done they permitted the creditors to repose upon the new security furnished until the Statute of Limitations had barred a right of action upon the old notes, without any suggestion that the deed was inoperative because of their failure to accept in writing the terms of the proposed settlement within ninety days. Their approval of, or at least acquiescence in, the conduct of their agents estops them in equity from enforcing the provision as to the acceptance in writing, so as to debar from the benefits of the deed any of the creditors who accepted the settlement by surrendering the old notes and taking the new ones. A married woman cannot be permitted, any more than an unmarried one, to retain the benefits of a transaction which she has solicited, and at the same time to disavow it. She cannot in this case retain the surrendered notes and repudiate the consideration upon which their surrender was made. 2 Story, Eq., sect. 1536.

2. As to the Stewart judgment, it is to be observed that the record shows it was rendered in an ordinary action of assumpsit

upon a promissory note of Mrs. Partee, without mention in the pleadings of any separate property belonging to her; or, indeed, of her being a married woman. The plaintiff Stewart knew that she was not a *feme sole*, and therefore neither he nor her son, who were the purchasers under the judgment, can claim any advantage from the omission. The judgment is simply a personal one; and a judgment of that character against a married woman is a nullity under the laws of Mississippi.

At common law, a married woman is incapable, except in a few special cases, of contracting a personal obligation. Her disability in this respect, by reason of her coverture, cannot be overcome. by any form of acknowledgment .or mode of execution, or by her uniting with her husband in the contract. The special cases in which the disability does not exist are those where she is compelled from necessity to act as a *feme sole*, as when her husband is imprisoned for life or for years, or has fled the country or been exiled. In such cases the husband is considered as civilly dead, and the wife as in a state of widowhood. Her disability also ceases when she is permitted to act as a sole trader, as in England by the custom of London; and in this country by special legislation. Equity, too, will sometimes·impose as a charge upon her separate estate a debt incurred by her for its benefit, or for her benefit on its credit; but this is a different matter from a contract by which a personal obligation is created. Except in the cases mentioned, the general rule is that she cannot be personally bound; nor can she be subjected on her contract to a personal judgment. Various reasons are assigned for this latter exemption, some of which would be destitute of force under our altered laws. Reeves, in his treatise on Baron and Feme, says, "that no action at law can be maintained against her, for the judgment in that case would subject her person to imprisonment; and thus the husband's right to the person of his wife would be infringed, ,which the law will not permit in any case of a civil concern." "And for the same reason," he adds, "there can be no personal decree against her in chancery. It must be one which reaches her property only." p. 171. This doctrine, whatever reasons may be assigned for it, has, with few exceptions, been recognized in the several States; and, in many

instances, personal judgments against married women upon their contracts, rendered upon defaults or by confession, have been held void.  *Griffith* v. *Clark*, 18 Ind. 457 ; *Morse* v. *Toppan*, 3 Gray (Mass.), 411 ; *Dorrance* v. *Scott and Wife*, 3 Whart. 309.  See also *Wallace* v. *Rippon and Wife*, 2 Bay (S. C.). 112, and *Norton* v. *Meader*, 4 Sawyer, 620–624.

The doctrine of the common law has, however, been greatly modified in most of the States by legislation, and the extent to which a married woman may contract, and the manner in which her contracts shall be authenticated and enforced, are definitely prescribed.  In Mississippi such modification has been made. The Code of 1857 enacted that the property owned by a woman at the time of her marriage, or which shall subsequently come to her, shall be her separate property, and not be subject to the debts of her husband, but shall be liable for her own debts contracted before marriage.  At the same time, it authorized a married woman, either by herself or conjointly with her husband, to contract with reference to her separate property, for its lease, use, and improvement, and the construction of buildings upon it; also, for the support of herself and children, and for many other things ; and provided that such contracts shall be binding on her, and that satisfaction for them may be had out of her separate property.  It also declared that, in addition to the remedies then existing by the common law by and against married women, "the husband and wife may sue jointly, or if the husband will not join her, she may sue alone for the recovery of her property or rights, and she may be sued jointly with her husband on all contracts or other matters for which her individual property is liable ; and if the same be against husband and wife, no judgment shall be rendered against her unless the liability of her separate property be first established."  Code of 1857, p. 335.

In several cases which have arisen under these provisions, it has been held by the Supreme Court of Mississippi that unless a married woman has a separate estate she is subject, as to her contracts, to the disability of coverture, and that a creditor suing her must, in his bill in equity or declaration at law, aver that she has such an estate, and that the debt is a charge upon it or ought to be paid out of it.  It was so held in *Choppin*

v. *Harmon*, decided in 1872, when the court added that every suit in the State, whether in law or in equity, founded upon her contracts, " takes the shape and direction of reaching a specific fund." 46 Miss. 307. And in *Bank of Louisiana v. Williams and Wife* (46 id. 629), decided in the same year, the court said, speaking of a suit against a married woman, " The condition precedent to a right of recovery, either at law or in equity, is that there be a separate estate out of which satisfaction may be had. Our jurisprudence does not realize the possibility of a personal judgment against a married woman." In *Casey* v. *Dixon* (51 id. 593), decided in 1875, a personal judgment was rendered against a married woman and her husband, and her land sold under execution issued upon the judgment. The purchaser at the sale brought ejectment for the premises. It was held that the judgment was void and the sale under it invalid; the court saying, citing language used in a previous case not then reported, that in order to authorize a judgment against a married woman, her liability must be shown by averment and established by evidence; that a married woman is incapable of being bound either by contract or judgment, except in the special cases authorized by law; and that by the code of the State, if the suit is against her and her husband, no judgment can be rendered against her, " unless the liability of her separate property be first established."

In *Mallet* v. *Parham* (52 id. 921), also decided in 1875, the court, speaking of the power of a married woman to contract for supplies for her plantation, said: " It is only in consequence of the existence of her separate estate that the statute authorizes her to make the contract, and that the separate estate alone is bound by the contract. The enforcement of the contract is in the nature of a proceeding *in rem*. No general judgment can be rendered against her so as to reach on execution any other property."

There are other adjudications of the Supreme Court of Mississippi to the same purport. Those cited are sufficient to establish the invalidity of the Stewart judgment. The allegation essential under those decisions in every suit against a married woman, that she has separate property which is liable for the debts alleged, is wanting in its record. That discloses

no ground of action upon which a personal judgment can be rendered against her under the law of the State. The coverture of Mrs. Partee at the time the judgment was rendered is averred in the bill and is admitted. That fact going to the jurisdiction of the court could be shown by competent proof. There was no question of innocent purchasers without notice in the case, the judgment creditor and the son of Mrs. Partee being the purchasers.

The decree of the court below must be reversed, and the cause remanded for further proceedings ; and it is

*So ordered.*

MR. JUSTICE MILLER dissenting.

I dissent from the judgment of the court in this case, and especially from that part of the opinion which holds that the judgment against Mrs. Partee and her husband, under which the land in question was sold, was absolutely void.

It is to be remembered that the question is not whether such a judgment would be held erroneous on an appeal from that judgment, but whether it can be held absolutely void when assailed collaterally in another action, where it is relied upon as the foundation of a title based on a sale under execution issued on the judgment.

Mrs. Partee was sued jointly with her husband. Both by the common law and by the law of all the States, a married woman could sue or be sued by joining her husband with her. The statutes of Mississippi, where this judgment was rendered, largely increased the liability of married women to be sued beyond what it was at common law. It made her liable, out of her separate estate, for supplies to the farm owned or cultivated by her, for any debt contracted with reference to her own property, whether the contract was made with the consent of her husband or not. In the case in which the judgment is held void, she signed a joint note with her husband, her name being signed before his ; and she was sued with him on that note, and personally served with process. She has never denied the validity of that judgment, or sought to set it aside or vacate its force    Other persons, not parties to that suit, now come into court and say that all that was done was void because it

does not appear affirmatively, by the record, that the note on which the suit was brought was a contract concerning her private property. That was a matter which, if it were true, should have been pleaded as a defence. She was subject personally to the jurisdiction of the court. Her contracts were subjects of which the court had jurisdiction. It had jurisdiction to enforce those contracts by sale of her individual property. The note on which she was sued had every indication that it was her individual contract, as it no doubt was, and that her husband's name was placed there to show his consent.

To hold that persons not interested in that contract, nor parties to the suit, can now come in and treat the judgment as absolutely void, on its face, is such a departure from all the principles on which the jurisdiction of the court is determined, that even the authority of the courts of Mississippi should not, in my opinion, control us in the matter.