# White v. Mayor and Council of Decatur.

*Mandamus to Require Payment of Bonded Debt of Municipality.*

1. *Municipal bonded debt a charge only on surplus revenues.*
   Where the interest and principal of a municipal bonded debt are payable out of the general revenues of the town, no part of such revenues that is necessary to meet current, legitimate municipal expenses can be subjected to the payment thereof,

[White v. Mayor and Council of Decatur.]

but only the surplus of income after governmental expenditures have been met, or provided for, can by any process of law, be applied to such debt; nor can it make any difference that the bonded debt is specially charged upon the general revenues, or that the corporate authorities are specially required by the bond act to set apart a sufficiency of such revenues to meet such debt.

2. *Necessary municipal expenditures, within discretion of corporate authorities.*—The courts cannot determine what municipal expenditures are necessary; if a given expenditure is within charter authorization, and, therefore, abstractly considered, a legitimate municipal charge, the courts cannot pass upon the advisability or wisdom of its being incurred. That is a matter within the discretion of the municipal authorities; except, it may be, that abuse of the discretion would be controlled, or, if bad faith attended its exercise, the courts would intervene.

3. *Legitimate municipal functions; streets, water, lights, public schools.*—The care and repair of streets, the supplying of water for the extinguishment of fires, flushing sewers, and the like, and of lights for the streets, parks and public buildings of a town, are essentially legitimate municipal functions; the support and maintenance of public schools, is not an essential municipal function, yet it is one proper to be vested by charter in municipal bodies, and, if contemporaneous with the act authorizing the issuance of municipal bonds, the power is conferred to appropriate revenues to public schools, such an appropriation is legitimate, and the corporate authorities cannot be required to apply it to the bonded debt.

4. *Appropriation of expected revenues so as to create a preference, not authorized.*—Municipal authorities have no right to apportion or appropriate expected revenues in advance of collection to a sinking fund for the payment of a debt, not a lien thereon, nor a current expense of administering the municipal government, so as to defeat the efforts of other creditors to subject the excess over necessary current expenditures to the payment of their demands.

5. *Mandamus for satisfaction of judgment creates a lien.*—A creditor of a municipal corporation having a judgment, a writ of *mandamus* prayed for as a means of satisfying his judgment, is in the nature of an execution, and should be given operation upon any surplus revenues, just as an execution should be given operation upon the funds of a private debtor in precedence and priority to the claims of simple contract creditors.

6. *Provisions of bond act to set apart fund, operative on surplus revenues.*—The provisions of a bond authorization act requiring the municipal authorities to set apart out of the general

revenues each year, an amount as a sinking fund to meet and pay off the principal and interest of the bonds at maturity, are operative and effective to entitle bond and coupon holders to have surplus revenues over current expenses set apart for the payment of their claims in priority to the claims of other creditors.

7. *Mandamus not denied because surplus not ascertained.*—Where, upon an application for a *mandamus*, the court is reasonably satisfied there will be a surplus of revenues which petitioner is entitled to have set apart for the payment of his demand, the relief will not be denied because the amount of such prospective surplus is not yet ascertained.

APPEAL from Morgan Circuit Court.

Tried before Hon. H. C. SPEAKE.

The case is stated in the opinion.

HARRIS & FYSTER, for appellant.—To allow defendants to divert the funds, where the rights of a creditor are involved, impairs the obligation of the contract. The legislature could not authorize such diversion.— *Fazende v. City of Houston,* 34 Fed. Rep. 95; 1 Dill. Mun. Corp. 69, and authorities cited to note 1; *Goodale v. Fennell,* 22 Am. Rep. 321. It is the duty of the defendant to set apart a fund as directed.—*F. St. Louis v. Zebler,* 116 U. S. 321; *Mayor v. U. S. ex. rel.,* 49 Fed. Rep. 40; *Baulieu v. Pleasant Hill,* 14 Fed. Rep. 222. Educational institutions not necessary to municipal government.—*Woolf v. Taylor,* 98 Ala. 254; City not bound to provide lights.—8 Am. Rep. 327. A diligent plaintiff entitled to be first paid.—*Coy v. City of Lyons,* 85 Am. Dec. 539. *Mandamus* proper remedy.—2 Dill Mun. Corp. 850, 853, 855 to 861; *Covington Co. v. Dunklin,* 52 Ala. 28; *Shinbone v. Randolph Co.,* 56 Ala. 183; 14 A. and E. En. of Law, 182 and note 2.

D. W. SPEAKE, *contra.*—If the funds were collected and the council refused to make the appropriation to pay appellant's demand, *mandamus* would be the proper remedy, but to restrain an illegal diversion of the funds to an alleged unauthorized purpose, injunction is the exclusive remedy. To maintain lights, supply water, maintain and keep in repair the streets, and provide a system of public schools, is a part of the duty that municipal authorities owe to the citizens in this age of enlightenment and progress.

McCLELLAN, J.—By an act approved February 24, 1887, the mayor and council of the town of Decatur were authorized to negotiate a loan of $50,000 for the purpose of draining, grading, macadamizing and improving the streets of the town, and to issue bonds for the payment of said loan. Section 3 of the act provides: "That to meet the interest and principal at maturity upon any or all of the bonds issued under the authority of this act, the said corporate authorities shall, and it is hereby made their duty to, set apart out of the general revenues of said town each year an amount as a sinking fund to meet and pay off the principal and interest upon said bonds at maturity, and to retain the same." Bonds were issued under this act, the city authorities failed to provide a sinking fund as required by the section just quoted, and defaulted in the payment of interest. Alonzo White holding coupons for the interests on the bonds, sued thereon and recovering judgment for about $5,000, had executions issued against the town which were returned "no property." He thereupon filed his petition for *mandamus* to the mayor and councilmen, directing them to set apart out of the revenues of the incoming or current year funds to meet and satisfy his judgment. It is alleged in the petition, substantially admitted in the answer and shown on the hearing that prior to the filing of the petition the mayor and council had made an estimate of the revenues from all sources for the incoming or current year, and that in their judgment the revenues for the year would probably amount to the sum of $9,906.66; and it was further made to appear that, assuming the correctness of this estimate, they, the mayor and council, had made the following estimates of or appropriations to what they conceived to be legitimate and necessary municipal expenses: Salaries: Mayor, $300; clerk, $480; marshal, $600; police, $540; extra police, $100; attorney, $50; public schools, $1,650; water, $900; lights, $800; streets, $1,000; miscellaneous, $500; and sinking fund (the balance of), $2,888.66. But the estimate or appropriation to sinking fund was not made under or with reference to the provision of the bond act quoted above, nor with a view to the payment of the interest or principal of said bonds; but the intention was to apply the sum so estimated or appropriated to a mortgage debt which the city had subsequently contracted. It is

averred in the petition that the proposed payments by the city for lights, water, streets and public schools and upon said mortgage will not be legitimate expenditures for the municipality, but will constitute diversions of the general revenues into unauthorized channels and away from necessary municipal charges; but the charter of Decatur expressly authorizes the mayor and council to make provision for supplying lights, and water to the town; and a special act passed at the same session of the General Assembly as the act authorizing the issuance of the bonds involved in this case, empowers and requires the town authorities to establish public schools and to appropriate funds out of the municipal revenues for their support and maintenance. And this was shown on the hearing below. And the prayer of the petition is "that a peremptory writ of *mandamus* issue to the respondents as mayor and councilmen of Decatur directing and commanding them to set apart from the general revenues of the city for the (current) year 1897, as soon as collected, a sufficient amount of money to pay petitioner's said judgment, and to pay the same; and that it be required to pay said judgment as and at the time its revenue is collected, and that it be required to pay said judgment before paying any money" on the contracts for lights and water, etc.; and for other appropriate relief, etc. On this state of case the circuit judge denied and dismissed the petition for *mandamus;* and from that judgment the petitioner prosecutes this appeal.

It is thoroughly well settled law that where the interest and principal of a municipal bonded debt is payable out of the general revenues of the town, no part of such revenue that is necessary to meet current, legitimate municipal expenses can be subjected to the payment thereof, but only the surplus of income after the governmental expenditures have been met or provided for can by any process of law be applied to such debt.—Dill. on Mun. Corp. §§100, 101; *Underhill v. Calhoun,* 63 Ala. 216; *Williamsport v. Commonwealth,* 90 Pa. St. 498; *East St. Louis v. United States,* 110 U. S. 321; *State ex rel. v. Kansas City,* 58 Mo. Appeal 124; *Commonwealth v. Commission,* 1 Wharton 1. Nor can it make any difference that the bonded debt is specially charged upon the general revenues or that the corporate authorities are specially required to set apart a sufficiency of such

revenues to meet such debt.  Special provisions of this
sort in statutes authorizing the issuance of bonds do not
enlarge the powers and duties of municipal authorities
in respect of paying funded debts.  Without them, they
are equally vested with the power and charged with the
duty of payment; and they are only important in their
operation upon surplus revenue over current expenses
and in providing, when they do provide, particular
methods of applying the revenues to the debt, as through
a sinking fund, and the like.  With or in the absence
of such provisions, it is within the power and is the duty
of municipal corporations, if necessary to the exercise of
that portion of the sovereign power which has been del-
egated to them for the public good and in carrying out
the objects of their creation as administrative agencies
of the State for the police and local government of desig-
nated divisions of territory, to apply the whole revenues
to current municipal expenses, leaving nothing to go in
payment of bonded debts.  Nor can the courts determine
what municipal expenditures are necessary.  If a given
expenditure is within charter authorization, and there-
fore abstractly considered a legitimate municipal
charge, the courts cannot pass upon the advisability or
wisdom of its being made or incurred.  That is a matter
within the discretion of the municipal authorities.—*E.
St. Louis v. United States ex rel.*, 101 U. S. 321; *Clay
County v. McAleer*, 115 U. S. 616.  It may be that abuse
on the part of such authorities of this decretion would
be controlled, that if bad faith attended its exercise the
courts would intervene; but no question of this sort is
involved in the case before us.

We do not understand the appellant to challenge the
foregoing principles.  His insistence rather is that cer-
tain expenditures proposed by the mayor and council
are not for legitimate municipal purposes at all, and
that the money appropriated or appointed to them con-
stitute, or will constitute when collected, funds in the
hands of the respondents in excess of the necessary ex-
penses of administering the town government, and
should therefore be set apart as a sinking fund, and ap-
plied to the payment of his judgment.  We have seen
what these items of proposed expenditure are.  As to
those for water, lights, streets and public schools, we do
not concur with appellant's view.  The care and repair

of streets, the supplying of water for the extinguishment of fires, flushing sewers and the like and of lights for the streets, parks and public buildings of a town, are essentially legitimate municipal functions, and powers and duties in respect to these matters are, as we have seen, expressly conferred and imposed upon the mayor and council of Decatur. The support and maintenance of public schools is not an essential municipal function, nor is power and duty in that regard uniformly invested in or charged upon municipal authorities; yet it is a function proper to be vested in municipal bodies; and was vested in the mayor and council of Decatur on the same day that authority was granted them to issue the bonds involved in this suit, and the power and duty of establishing and maintaining public schools out of the general revenues of the town was in and upon them when said bonds were issued. There is therefore no room for holding that any of these items of expense are unauthorized, or for requiring the mayor and council to apply to petitioner's judgment the money which is necessary and has been appropriated to meet them.

There is one other item in the estimated and proposed expenditures for the current year to be considered. The unchallenged items of necessary current expenses with those items which were challenged but which we have held to be legitimate and proper, leave of the estimated current revenues the sum of $2,888.66, as we have seen. This sum was apportioned and appropriated in advance of collection to the sinking fund, it being the intention of the mayor and council to disburse it upon a mortgage debt which the town owed and had owed for five or six years. Very clearly, of course, this debt was not a current expense of administering the municipal government, and the town authorities had no right to apportion any part of the expected revenues to this payment so as to defeat the efforts of other creditors to subject the excess over necessary current expenditures to the satisfaction of their demands. This mortgage we suppose was upon the tangible property of the corporation; and the holder of it had and could have no lien upon the revenues of the town, nor any claim to any part thereof superior to the demands of petitioner. The petitioner having a judgment, the writ of *mandamus* which he seeks as a means of satisfying his judgment is in the

nature of an execution thereon, and should be given operation upon any surplus of revenue, just as an execution should be given operation upon the funds of a private debtor in precedence and priority to the claims of simple contract creditors. And, moreover, the provisions of Section 3 of the bond authorization act quoted above are operative and effective to entitle bond and coupon holders to have surplus revenues over current expenses set apart for the payment of their claims in priority to the claims of other creditors.

That from the point of view of the hearing below there would be a surplus of revenue over current governmental expenditures we are reasonably satisfied. The estimate of the revenues for the incoming or current year made by the mayor and council and the apportionment or appropriation by them of a large excess to the sinking fund was *prima facie* proof that there would be a surplus. This estimate and apportionment was formally made and entered of record by the mayor and council, and as entered appears to have been upon *data* before them as to the assured valuation of taxable property, the number of polls, the number and character of licenses to be, or which had been, issued, the probable amount of fines which would be imposed and collected, the amount of collectible taxes, etc. It is not conceivable that the board could have made a mistake of nearly $3,000 in an estimate thus made of probable receipts of less than $10,000; and surely we would not be justified in finding they made so gross an error merely from the expression of the mayor's opinion when examined in this case that probably the revenues would not exceed the current expenses.

As to the precise amount of the surplus we are not concerned. Whatever it is it should be set apart for application to petitioner's judgment; and that it might or would be less than the judgment, so that he would realize less than he prays for is no reason for not granting the relief prayed to the extent of the fund which should be applied to the claim.—*Howard v. City of Huron,* 60 N. W. Rep. 803.

The judgment denying *mandamus must be reversed.* The cause is remanded.